# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| OPTION ONE MORTGAGE | : | |
| CORPORATION, as Attorney-In-Fact | : | |
| for Lasalle Bank, N.A., As Trustee | : | |
| of the Structured Asset Investment | : | |
| Loan Trust, 2003-BC7, | : | CIVIL ACTION NO. |
| | : | 1:05-CV-0836-JOF |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| ALLSTATE INSURANCE | : | |
| COMPANY, | : | |
| | : | |
| Defendant. | : | |

## OPINION AND ORDER

This matter is before the court on Defendant's motion for summary judgment [23-1] and Plaintiff's motion for summary judgment [24-1].

### I.      Background

#### A.      Procedural History and Facts

Plaintiff, Option One Mortgage Corporation, filed suit against Defendant, Allstate Insurance Company, on February 21, 2005, alleging that Allstate breached its contract of insurance and committed fraud. Option One also seeks bad faith penalties and attorney's fees

AO 72A
(Rev.8/82)

pursuant to O.C.G.A. § 33-4-6.  The parties engaged in discovery and filed cross motions for summary judgment.

Because the parties have filed cross-motions for summary judgment, the court accepts the facts that are unopposed and indicates where the parties dispute facts.  In the discussion, the court determines whether those disputed facts are material to the issues at hand.  The court also reminds the parties that this court's Local Rules require parties to file an original copy of deposition transcripts cited in parties' motions.  The electronic attachment of deposition transcript is not sufficient under the rules.  *See* Local Rule 56.1(C) ("In addition, when a portion of a deposition is referenced and submitted, then the party in custody of the original of that deposition shall cause the entire deposition to be filed with the Court.").  Neither party has complied with this rule.

On April 13, 2003, Allstate issued a homeowner's insurance policy to Rodney Johnson to cover the property at 3543 Kingsboro Road, Atlanta, Georgia.  Option One was listed as a mortgagee on the insurance policy as Mr. Johnson had taken out a $332,500 loan from Option One on April 21, 2003, in exchange for which he executed a promissory note and security deed to Option One.  On January 6, 2004, Option One foreclosed on the property.

The Kingsboro property was substantially damaged by a fire on February 9, 2004.  The City of Atlanta Fire Department concluded the fire was a result of arson.  Option One, through its counsel Thomas Rutledge, contacted Allstate in February 2004 to make a claim under the policy.

2

On February 26, 2004, Option One filed a separate mortgage insurance claim with the Mortgage Guaranty Insurance Corporation for $347,801.41. Mortgage Guaranty, however, rejected this claim and rescinded the policy due to misrepresentations and fraudulent documents submitted by Mr. Johnson with the loan application documents.

Representatives of Option One and Allstate were in contact during February and March 2004. Of concern here, the parties dispute whether an offer of settlement was made by Allstate to Option One on March 17, 2004. Mr. Walz, counsel for Option One after Mr. Rutledge, testified that Allstate "never offered to pay Option One the amount of the estimate of repairs that it mailed to Option One." *See* Walz Depo., at 93. During Mr. Rutledge's testimony, he agreed that while he was handling the Option One insurance claim "no offer of settlement was ever made by Allstate to Option One." *See* Rutledge Depo., at 9. Mr. Rutledge's counsel then immediately asked for a break. *Id.* at 10. The counsel then stated, "Mr. Rutledge would like to correct his testimony from the last question that was answered." *Id*. He indicated that Mr. Rutledge's recollection of the events has been refreshed by the telephone log." *Id.* at 11.

The telephone log kept by Mr. Rutledge's office shows that on March 17, 2004, an individual in Mr. Rutledge's office, Christine Myers, talked to Debbie Hatfield from Allstate and made the following record of the telephone call:

> ACV [actual cash value] $83,283.86, dep $23,702.95, replacement value on policy $106,986.81. Allstate wants to pay the ACV. If house is repaired within 180 days, they will pay us the difference between RCV and ACV. $390K in

structural coverage.   She wants us to sign a permission form to go into the
premises.   Told her of our EOR [estimate of repair] of $180K-$200K.   She
says that they don't pay for code upgrades for the asbestos siding.   We need to
review the policy, which we should be rcving soon.

*See* Rutledge Aff., Exh A.   The telephone log also shows that on March 15, 2004, it was Ms.

Myers who left a voice mail message for Ms. Hatfield inquiring "how much is Allstate's

EOR?"   *Id.*   She had previously left voice mail messages for Ms. Hatfield on March 9 and 11,

2004, asking her to fax Allstate's EOR.   *Id.*

> Ms. Hatfield testified:
>
> At no point in time, did I ever offer to settle the Plaintiff's claim.   The
> Plaintiff's claim was still under investigation to see whether or not it was
> covered.   I also refused the Plaintiff's request for Allstate to pay it $83,283.86
> pursuant to Allstate's Estimate of Repairs which was forwarded to the Plaintiff
> (at the Plaintiff's request).

*See* Hatfield Aff., ¶ 3.

> I did speak with a female employee from Attorney Rutledge's office on or
> about March 17, 2004.   She asked me to give her the dollar figures contained
> in Allstate's Estimate of Repairs since she had not received it yet.   She also
> wanted an explanation of how the Policy worked in the event the Plaintiff's
> claim was covered which I provided to her.   At no time did I ever inform the
> female employee that Allstate was going to pay the Plaintiff's claim.

*Id.*, ¶ 4.

Mr. Rutledge then sent a letter to Allstate's attorney on April 27, 2004, asking Allstate

to pay the $83,000 actual cash value loss, but that Allstate responded that it would not

"simultaneously reconcile the difference of opinion as to the amount of loss until the

4

examination under oath was completed." *See* Rutledge Depo., at 12-13.  On April 27, 2004,

Mr. Rutledge filed a sworn statement in proof of loss with Allstate.

On August 18, 2004, Allstate corresponded with Option One and stated that it would

require Option One to produce its "entire loan file in this matter, omitting nothing."  Allstate

also indicated that it would likely request an examination under oath of the Option One

individual knowledgeable of the loan.  The same letter also reserved Allstate's rights under the

policy:

> Please understand that no action of Allstate Insurance Company or its
> representatives should be considered as a waiver of any of the terms,
> conditions, or provisions contained in the Allstate Policy of Insurance or found
> under the laws of the State of Georgia.  On the contrary, Allstate will continue
> to insist upon strict compliance with the terms, conditions, and provisions
> contained in the Allstate Policy of Insurance and the laws of the State of
> Georgia.

*See* Rutledge Depo., Exh. 14.

On September 17, 2004, Allstate denied Mr. Johnson's claim based on his involvement

with the arson and his material misrepresentations to Allstate during the claims and

investigation process.

On October 18, 2004, in response to Allstate's August 18, 2004 request for the loan

file, Mr. Rutledge wrote to Allstate's attorneys and indicated Option One "will provide

information that is reasonably related" to Allstate's investigation.   Option One objected to

producing the entire loan file as "irrelevant, overly burdensome, and unreasonable" but agreed

to provide the file.  Mr. Rutledge concluded by stating,

[In] the meantime, I suggest we explore whether Allstate and Option One can reconcile their substantial difference of opinion as to the amount of loss. We have not received any response from Allstate to our objection of Allstate's estimate of loss dated February 27, 2004 expressed in our letter dated April 27, 2004. Please contact me to determine how Allstate and Option One can seek to reconcile their differences.

Allstate responded by again requesting the entire loan file and indicating that "[q]uestions have arisen regarding the veracity and validity of the claim presented by Option One." The letter also stated, "pending receipt of [the entire loan file] and completion of any other investigation necessitated by Option One's claim, it is premature to discuss the 'substantial difference of opinion as to the amount of loss.'" That letter also contained a reservation of rights.

Mr. Rutledge responded that Allstate was demanding irrelevant documents and inquiring about the questions that had come up. He also responded that it was "not premature to address the issue of the amount of loss. Even if Allstate believes, for whatever reason, that the loan file may contain information that may bar Option One's recovery under the policy, Option One believes Allstate should simultaneously proceed with an effort to reconcile the difference of opinion about the amount of loss."

Option One did produce a loan file to Allstate on October 22, 2004, although the parties agree that this production did not include Mr. Johnson's W-2, pay stubs, and employment and wage verification information. Option One asserts that these omissions were inadvertent.

6

On December 21, 2004, Pamela Bensimon, an individual at Mr. Rutledge's firm, recorded in her diary that she had spoken with Allstate's attorney, Mr. Dikeman, who informed her that Allstate intended to ask for an examination under oath of the individual at Option One with knowledge of the loan.   Mr. Dikeman also informed her that the "person involved with the mortgage had been involved with mortgage fraud, depending on the outcome of the investigation, they [Allstate] think they can deny our claim.   The delay was also because we could not get the whole mortgage file."   *See* Rutledge Aff., Exh. 1.

Another letter from Allstate to Option One on January 3, 2005, requested that Option One designate an individual to give an examination under oath and again reserved its rights under the policy.   Option One responded on January 4, 2005, stating that if Mr. Johnson had engaged in fraud in procuring the mortgage loan, such fraud could not be imputed to Option One.   Option One complained about the demands for information from Allstate but indicated it would locate someone to sit for an examination under oath.

Mr. Walz testified that during the week of January 7, 2005, he left a message for Mr. Dikeman indicating that Richard Vosler would sit for the deposition.   Allstate asserts it never received this information and again contacted Option One on February 4, 2005, and stated that no person had been yet identified for examination under oath.   Allstate informed Option One that it considered the examination "to be an important part of its investigation." No further progress was made, Allstate cited the one-year limitation period, and Option One filed the instant suit on February 21, 2005.

7

The Allstate policy contains a limitation period in the provision entitled Suits Against Us, which states: "No suit or action may be brought against us unless there has been full compliance with all policy terms. Any suit or action must be brought within one year after the inception of loss or damage." The Allstate policy also contains certain conditions the insured must follow, including providing accounting records, bills, invoices and a submission to examinations under oath. *See* Policy, What You Must Do After A Loss. The policy also discusses Allstate's Settlement Options, stating that Allstate has the option of "repair, rebuild, or replace" or to "pay for all or any part of the damaged, destroyed, or stolen property" and that "[w]ithin 30 days after we receive your signed, sworn proof of loss we will notify you of the option or options we intend to exercise." *Id.*

8

**B.      Contentions**

Allstate argues that Option One's suit is barred by the one-year limitations period in the insurance policy because the fire loss occurred on February 9, 2004, and Option One did not file suit until February 21, 2005.   Option One responds that Allstate has waived the limitations period because by its actions of offering to settle Option One's claim, seeking information on claim amount from Option One, asking for an examination under oath of an official from Option One, indicating it was "premature" to discuss amount of loss until the investigation was complete, and never outright denying Option One's claim, Allstate lulled Option One into believing that it would pay Option One's claim until after the limitations period expired.

**II.      Discussion**

**A.      Limitations Period**

An insurance provision which lessens the otherwise applicable statute of limitations for bringing suit is enforceable.  *Suntrust Mortgage, Inc. v. Georgia Farm Bureau Mut. Ins. Co.*, 203 Ga. App. 40, 41 (1992).   Under Georgia law, however, "it is a universal rule that, where the insurer, by its acts in negotiating for a settlement, has led the policyholder to believe that he will be paid without suit, the insurer cannot take advantage of a provision in the policy which requires the action to be brought in a certain time."   *Nee v. State Farm Fire & Cas. Co.*, 142 Ga. App. 744, 746 (1977) (quoting *Stanley v. Sterling Mut. Life Ins. Co.*, 12 Ga. App. 475, 477 (1913)).   Thus, if an insurer leads an insured to rely on a promise to pay,

9

whether express or implied, which causes the insured to believe he will be paid without resort to a lawsuit, the insurance company will have waived that provision of the insurance policy. *Auto-Owners Ins. Co. v. Ogden*, 275 Ga. 565, 567 (2002); *Nee*, 142 Ga. App. at 746.

In *Suntrust Mortgage*, the subject property suffered an arson fire on February 16, 1990.  On May 2, 1990, the insurer requested proof of loss from the mortgage company. Suntrust provided proof of loss on June 22, 1990.  Two months later, the insurer made an offer of settlement to Suntrust and asked Suntrust to respond immediately.  In October 1990, Suntrust asked for another copy of the settlement offer, which the insurer provided.  On February 14, 1991, Suntrust made a counteroffer to the insurer who received it on February 16, 1991.  Four days later, the insurer rejected Suntrust's counteroffer stating that the one-year limitations period had expired.  Suntrust then filed suit.

While the court recognized "that an insurer can be held to have waived a limitation period when its 'investigations, negotiations, or assurances . . . up to and past the period of limitation . . . led the insured to believe the limitation would not apply," the court held that under these circumstances,

> [W]e find no evidence that the conduct of Georgia Farm Bureau lulled Suntrust into believing that the period of limitation would not apply.  There is no evidence of continuing negotiations or of an 'affirmative promise, statement or other act . . . to lead [Suntrust] into believing that [Georgia Farm Bureau] intended to enlarge on the limitation period contained in the contract . . . ."

*Id.* at 42 (quoting *Johnson v. Georgia Farm Bureau Mut. Ins. Co.*, 141 Ga. App. 859 (1977)).

10

Similarly, in *Stapleton v. General Acc. Ins. Co.*, 236 Ga. App. 835 (1999), enforcement of the limitations provision was upheld.   After suffering water damage to her bed-and-breakfast, Stapleton had promptly informed her insurer of her loss, and the adjuster both approved moneys for structural repair and sent Stapleton an advance on any personal contents claim.   *Id*. at 836.   Further payments on personal contents, however, were conditioned on a formal, documented claim of those damages.   *Id*.   While Stapleton filed a claim for personal contents damages, she did not provide information to the insurer as to proof of ownership, value, and extent of damages to these personal items.   *Id*. at 836-37.   The insurer continued to deny liability as her claim was incomplete.   *Id*. at 837.   Once the two-year limitations period ran, the insurer closed the books on Stapleton's claim.   *Id*.   The Court of Appeals found that the insurer had not waived the limitations period, and Stapleton's suit was barred.   *Id*.

> The evidence shows only that [the insurer] continued to negotiate with Stapleton, waiting for documentation supporting her contents claim. "[M]erely negotiating for a possible settlement of a disputed claim which is unsuccessfully accomplished is not conduct designed to lull the claimant into a false sense of security and does not preclude an assertion of the contractual" suit limitation period.   Rather, [t]o conclude that the policy limitations have been waived or estopped, there must be an affirmative promise or other act waiving the limitation[,] or an actual or constructive fraud leading the insured to believe the limitation [period] would be enlarged, or lulling him into the security of actually thinking [that] the claim would in fact be paid without suit.

*Id*. (internal citations omitted).

11

O.C.G.A. § 34-20-40 also provides that certain acts by insurers do not constitute waiver of policy limitation periods, including acknowledging receipt of a notice of claim, providing forms for reporting loss, gathering information concerning a loss, and investigating loss or engaging in negotiations toward settlement of a loss or claim. *Id.*

Option One argues that it anticipated that Allstate would eventually pay the claim because (1) an Allstate representative stated on March 17, 2004, that Allstate desired to pay the actual cash value of the loss; (2) Allstate submitted an estimate of repairs to Option One; (3) Allstate had asked Option One to submit a proof of loss; (4) Allstate did not respond to Option One's proof of loss; (5) Allstate asked Option One to submit to an examination under oath; (6) Allstate never denied Option One's claim; and (7) Allstate said it was "premature" to discuss amount of loss before Allstate completed its investigation.

In practical terms, the incident progressed as follows:  The covered property was burned in a fire determined to be arson.  Allstate investigated the original owner of the property, Mr. Johnson, and determined that he procured the funding for the property by means of fraud.  That Mr. Johnson's acts were fraudulent is not disputed.  Due to the circumstances of the arson and Mr. Johnson's fraud, Allstate undertook an investigation to determine whether Option One's interests, as mortgagee, were valid.  Option One is correct that if it were not aware of Mr. Johnson's fraudulent activity, its rights under the Allstate policy most likely would not be affected.  However, Option One seems to have taken the approach that Allstate's investigation of the matter was somehow improper.  Option One essentially argues that

12

Allstate should have taken its word that its claim under the policy was valid.  Allstate, however, is entitled to investigate.  Option One repeatedly refers to the loan file as "irrelevant" material.  However, as the interaction with Mortgage Guaranty Insurance Company shows, the W-2s and other documents submitted by Mr. Johnson to apply for the loan, were determined to be fraudulent.  Thus, the extent to which Option One was aware of this or should have undertaken a sufficient investigation concerning Mr. Johnson's application, would certainly be relevant for the purposes of Allstate determining whether Option One's claim was valid without the taint of fraud.  Similarly, Allstate was acting within its rights under the policy to seek an examination under oath of the person familiar with the loan transaction with Mr. Johnson.  Option One never explains why these actions were allegedly improper in light of the arson investigation and Mr. Johnson's undisputed fraudulent activities.

Thus, setting all other alleged improprieties aside, the court focuses on the seven actions taken by Allstate that Option One contends "lulled" it into a sense of security concerning Allstate's intentions to pay Option One's claim.  Option One relies most heavily on Allstate's supposed offer of settlement on March 17, 2004.  On that day, Ms. Hatfield of Allstate spoke with Christine Myers in Mr. Rutledge's office.  As described above, a review of Mr. Rutledge's communication log, proffered by Option One for the court to consider, shows that in the days leading up to March 17, 2004, Ms. Myers had been attempting to contact Ms. Hatfield to get a copy of Allstate's Estimate of Repair.  This information was necessary from Option One's perspective because if Option One's preliminary review of the

13

damage done at the property differed substantially from Allstate's, Option One would then hire its own estimator to provide support for the figured it wished Allstate to reimburse.  Ms. Hatfield informed Ms. Myers that the Estimate of Repair was too lengthy to fax, and on March 15, 2004, Ms. Myers left a voice mail simply asking for the final figure, presumably so that she could decide sooner rather than later whether Option One would need to procure its own estimate.

Ms. Myers and Ms. Hatfield finally spoke in person together on March 17, 2004. Giving full credit to Ms. Myers' description of the conversation, Ms. Hatfield informed her of Allstate's bottom line estimate number and explained in accordance with the options under the policy that Allstate would like to pay the actual cash value.  This is all Ms. Myers' log records, and Ms. Myers never testified in the instant proceeding.  Ms. Hatfield's testimony does not dispute Ms. Myers' log.  Ms. Hatfield testified that she did provide Allstate's total Estimate of Repairs at Ms. Myers' request and also at Ms. Myers' request, Ms. Hatfield explained how the policy options worked and what Allstate would do under the policy.  It is undisputed that the information provided by Ms. Hatfield was entirely in response to questions prompted by Ms. Myers.  The court finds that no reasonable jury could construe this as an offer of settlement, express, implied, or otherwise.  Furthermore, none of the actions taken by Allstate subsequent to the March 17, 2004 conversation is consistent with an offer of settlement.

14

Option One also contends that because during the week of January 7, 2005, it provided a name of a person to be deposed, Allstate acted improperly by not responding to that information and delaying until the one-year limitations period expired. Again, Option One's argument ignores undisputed facts in the record. It is undisputed that as early as August 18, 2004, Allstate informed Option One that it would likely need to take an examination under oath as part of its investigation of the claim. Mr. Rutledge's own communication log indicates that Allstate's representative again informed Option One on December 21, 2004, that Allstate intended to ask for an examination under oath. A formal letter followed from Allstate on January 3, 2005. Even crediting Mr. Walz's disputed testimony that he informed Allstate the week of January 7, 2005, of the name of the individual, there is no evidence to show that Allstate delayed acting until after the one-year deadline passed on February 9, 2005. In fact, Allstate sent another letter on February 5, 2005, asking Option One to name an individual. In addition to being consistent with Allstate's contention it had never received a name from Option One, it also cuts against Option One's delaying tactic argument. If Allstate were waiting out the one-year period, it would be illogical to send a letter to Option One four days before the expiration of the period asking for the name of an individual to depose.

The court also finds nothing untoward about Allstate's statement that it would be "premature" to discuss loss figures while Allstate was still investigating the claim. It is obvious from the parties' exchange of correspondence that Option One continued to push for a settlement of the loss amount while Allstate continued to emphasize that it had not yet made

any decisions about the claim and was still conducting an investigation.  These are, in fact, entirely reasonable positions for the insured and the insurer to take.  There is, however, no reasonable interpretation of the word "premature" which would allow Option One to argue that simply because Allstate was putting that discussion off until the future, it was somehow admitting the validity of the claim.  As with its request for the Estimate of Repairs, Option One cannot by its own actions force Allstate into having conceded the validity of the claim.

O.C.G.A. § 34-20-40 explicitly states that asking an insured to submit a proof of loss statement is not a waiver by the insurer of any rights under the insurance contract.  Option One, however, also contends that Allstate never responded to its proof of loss statement submitted on April 27, 2004.  Again, in the chronology of events as described by the court above, the proof of loss statement was part of a continuing conversation among the parties and is not an event that stands alone.  Mr. Rutledge, himself, understood this and testified that he sent a letter to Allstate's attorney on April 27, 2004, asking Allstate to pay the $83,000 actual cash value loss, but that Allstate responded that it would not "simultaneously reconcile the difference of opinion as to the amount of loss until the examination under oath was completed."  *See* Rutledge Depo., at 12-13.  Again, these positions are entirely logical considering the parties' interests and provide no basis for a claim that Allstate "lulled" Option One into thinking it was going to settle Option One's claims only to ride out the one-year limitation period.  In fact, to the contrary, Allstate's actions consistently reflect its concerns for the validity of the claim.

16

Finally, Option One argues that Allstate never denied its claim.  While it is true that in some contexts, Georgia courts have considered whether an insurer denies coverage, this fact is not dispositive.  As the court has described above, this is not a factual context where Allstate's position on the claim was ambiguous enough that its mere failure to deny the claim could be construed as indicating to the insured that Allstate intended to pay the claim.  *See also Shelter American Corp. v. Georgia Farm Bureau Mut. Ins. Co.*, 209 Ga. App. 258 (1993) ("[m]ere negotiation for possible settlement unsuccessfully accomplished is not that type of conduct designed to lull the claimant into a false sense of security so as to constitute an estoppel by conduct thus precluding an assertion of that defense by the insured") (citation omitted).

*Compare Appleby v. Merastar Ins. Co.*, 223 Ga. App. 463 (1996) (waiver of limitations period question for jury where insurer may have agreed to take examination under oath of insured outside the limitations period); *Nee v. State Farm Fire & Cas. Co.*, 142 Ga. App. 744 (1977) (where insurer admitted liability under policy and parties were merely negotiating on final settlement price of claim); *Georgia Farm Bureau Mut. Ins. Co. v. Mikell*, 126 Ga. App. 640 (1972) (rejecting limitations defense where insurer sent proof of loss form with further action to be taken within 60 days and expiration of limitations period occurred prior to 60 days); *Ku Klux Klan v. Fidelity & Deposit Co.*, 47 Ga. App. 12, 17-18 (1933) (waiving limitations period where insured and insurer had numerous exchanges of correspondence on how to establish the claim amount and eventually agreed to hold claim in

17

abeyance pending further investigation, insurer further suggested to insured that it should not "push" the matter while other issues were being decided, particularly where insurer continued discussions with insured after limitation period expired); *Hartford Ins. Co. v. Amos*, 98 Ga. 533, 535 (1895) (insurer never denied liability, continually discussed loss with view toward negotiation and settlement).

For the foregoing reasons, the court finds that Allstate did not waive its one-year limitations period under the policy and concludes that Option One filed its breach of contract action out of time. The court GRANTS Defendant's motion for summary judgment as to Plaintiff's breach of contract and O.C.G.A. § 33-4-6 bad faith claims.

**B.     Fraud**

Option One also contends that Allstate engaged in fraudulent acts by stating (1) its desire to pay Option One's fire loss claim; (2) it intended to conduct an examination under oath as part of its investigation; (3) it was premature to resolve the amount of loss before its investigation was completed; (4) that questions had arisen regarding the veracity of Option One's claim; and (5) it would take an examination under oath prior to closing its investigation.

As an initial matter, it appears that under Georgia law, Option One's fraud claims are also subject to the one-year limitations period contained in the insurance contract as they arise out of the insurance policy. In *McCoury v. Allstate Ins. Co.*, 254 Ga. App. 27 (2002) (physical precedent only), the plaintiffs' residence was partially destroyed by fire. The cost of repairs exceeded $300,000, but the plaintiffs' insurance policy had a $225,000 limit in

dwelling protection.    Plaintiffs filed suit under a negligent failure to provide sufficient coverage theory.   The insurer defended arguing that the claim was time barred by the one-year policy limitation period in the insurance contract.   Because the provision applied to "[a]ny suit or action" seeking recovery for "loss or damage," the court held it was "not limited to actions for breach of the policy."   *Id.* at 28.   "Clearly, it applies where, as here, policyholders bring suit against the insurer to obtain indemnification which they claim the insurance policy should have provided for damages to insured property.   Although this is not an action for breach of the policy, it is certainly an action brought by the plaintiffs by virtue of their status as policyholders." *Id.*

In any event, even if Option One's fraud claims are not barred by the one-year limitations period, they still fail.   Under Georgia law, the elements of fraud are a (1) false representation, (2) scienter, (3) intention to induce plaintiff to act or refrain from acting, (4) justifiable reliance by plaintiff, and (5) damage to plaintiff.   *See*, *e.g.*, *Scarbrough v. Hallam*, 240 Ga. App. 829, 832 (1999).   *See also Wood v. Noland Credit Co.*, 113 Ga. App. 749, 749 (1966) (to "amount to fraud, a representation must relate to past or existing fact and cannot consist of mere broken promises, unfulfilled predictions or erroneous conjecture as to future events"); *Ely v. Stratoflex*, 132 Ga. App. 569, 571 (1974) (actionable fraud does not "result from a mere failure to perform promises made" but may be "predicated on a promise made with a present intention not to perform").

19

Option One has presented no evidence from which a reasonable jury could conclude that any of Allstate's statements were more than mere promises concerning future actions, or that Allstate knew they were false at the time they were made. A purported "desire" to pay a fire loss claim is not an actionable promise. The same result obtains for an "intention" to conduct an examination under oath and a mere statement that it would be "premature" to discuss loss amount. Furthermore, the record documents numerous occasions upon which Allstate sought an examination under oath from Option One. A factual dispute concerning Allstate's failure to respond to Option One's designation that finally occurred in January 2005 does not render false Allstate's statement that it intended to take an examination under oath. Finally, it is demonstrably true that questions had arisen concerning the claim due to the fact that Mr. Johnson had undisputably committed fraud in the procurement of his mortgage application.

For the foregoing reasons, the court GRANTS Defendant's motion for summary judgment on Plaintiff's fraud and punitive claims.

**III.   Conclusion**

The court GRANTS Defendant's motion for summary judgment [23-1] and DENIES Plaintiff's motion for summary judgment [24-1].

The Clerk of the Court is DIRECTED to DISMISS with PREJUDICE Plaintiff's complaint.

20

**IT IS SO ORDERED** this 3rd day of August 2006.


                                            _____ s/ J. Owen Forrester _____
                                               J. OWEN FORRESTER
                                SENIOR UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)